# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 97 C 4836 | **DATE** | 4/17/2000 |
| **CASE TITLE** | Robert Brown vs. Illinois Central Railroad Co. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION:** The Court grants Defendant Illinois Central's motion (Doc 53-1) to dismiss for lack of subject matter jurisdiction. Ruling set for April 27, 2000 is stricken as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | number of notices | | | **Document Number** |
|---|---|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | | | |
| | No notices required. | | | | | | |
| | Notices mailed by judge's staff. | | | | | | |
| | Notified counsel by telephone. | | | | APR 1 8 2000 | | |
| ✓ | Docketing to mail notices. | | | | date docketed | | |
| ✓ | Mail AO 450 form. | | | | | | 61 |
| | Copy to judge/magistrate judge. | | | | docketing deputy initials | | |
| SCT | courtroom deputy's initials | | | | date mailed notice | | |
| | | | Date/time received in central Clerk's Office | | mailing deputy initials | | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ROBERT BROWN,                    )
                                 )
                Plaintiff,       )
                                 )
        vs.                      )        97 C 4836
                                 )
ILLINOIS CENTRAL RAILROAD        )
COMPANY,                         )
                                 )
                Defendant.       )

DOCKETED
APR 1 8 2000

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the Court on Defendant's motion to dismiss for lack of subject matter jurisdiction. For the reasons set forth below, the Court grants Defendant's motion.

## BACKGROUND

On July 9, 1997, Plaintiff Robert Brown ("Brown") filed a complaint alleging that Illinois Central Railroad Company ("Illinois Central") violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., when it wrongfully placed him on medically disqualified status on or about June 13, 1996. It is undisputed that Brown suffers from a condition known as schizoaffective disorder.

61

This dispute arises over whether Brown's condition prevents him from working as a trainman for Illinois Central.

## A.   Illinois Central

Illinois Central is a "carrier" by rail as defined under the Railway Labor Act, 45 U.S.C. § 151, et seq. (the "RLA"), and is headquartered in Chicago, Illinois. Illinois Central's operations are divided into several departments and most of its non-managerial employees are members of various unions.   Each group of employees, or "craft," has its own separate identity, with its own collective bargaining agreements, work rules and seniority.

Illinois Central employees who work on the trains are part of the company's Transportation Department.  The Transportation Department consists mainly of two groups of employees: engineers and trainmen.  Illinois Central's trainmen craft is made up of two sub-classes: conductors and trainmen/brakemen/switchmen. (Because  Brown's  last  position  with  Illinois  Central  was  as  a trainman/brakeman/switchman, and it is for this position that Brown asserts Illinois Central discriminated against him,  our use of the term "trainman" refers to the trainman/brakeman/switchman position).  A trainman's primary job duties require that he throw track switches, couple and uncouple cars, couple and uncouple hoses and engage and disengage brakes.  Illinois Central's trainmen are represented by the

United Transportation Union ("UTU"). The UTU has entered into a collective bargaining agreement (the "CBA") with Illinois Central on behalf of the trainmen.

Illinois Central has regularly established trainmen positions, as well as "guaranteed extra board" ("GEB") trainmen positions. GEB trainmen are extra employees who are generally assigned to fill daily vacancies in the regularly established trainmen assignments. Such vacancies occur for any number of reasons, including illness, vacation or personal business. When an Illinois Central employee takes a day off, for any reason, he or she is said to "lay off" that day.

Prior to May 1995, Illinois Central had both yard and road GEB positions. Yard GEB jobs were limited to working within a prescribed geographical area known as a switching limit. In addition to this geographical limitation, yard jobs also had restrictions on employee starting times, which limited Illinois Central's flexibility in scheduling its employees. Yard GEBs had two assigned days off per week, while road GEBs had no assigned days off. In May 1995, Illinois Central abolished yard jobs and yard GEBs. Work previously performed by yard employees has since been performed by road GEBs (including Brown).

Regularly established (non-GEB) trainmen have a specific work schedule and location. The regularly established trainmen jobs are six day per week positions. Trainmen with the most seniority at Illinois Central fill the regularly established, six day per week positions. GEB employees, on the other hand, do not have assigned

- 3 -

days off. Since May 1995, when Illinois Central abolished yard jobs, Illinois Central has taken the position that GEB employees be available to work seven days a week, 24 hours a day (subject to the federal hours of service laws). Brown disputes whether a GEB employee is required to be available seven days a week, 24 hours a day.

GEB employees remain on GEB status for as long as they wish and continue to work whenever a trainman position becomes available. Because Illinois Central has a strong incentive to have employees available to work on the trains, GEB employees are paid for each day they are on GEB status and are available to work, regardless of whether they actually work.

## B.     Plaintiff Robert Brown

Robert Brown began working for Illinois Central as a store clerk in October 1978. Brown transferred to the trainmen craft on or about May 11, 1979, which is his trainman seniority date. At all times relevant to this litigation, Brown ranked 216th out of 226 trainmen on the seniority list. Only 10 trainmen had less seniority than Brown.

Sometime during the course of Brown's employment with Illinois Central, he was diagnosed by his personal physician as suffering from schizoaffective disorder, a condition that makes it harder for him to learn new concepts. Dr. Alexander Obolsky, one of Brown's treating physicians, testified that schizoaffective disorder

can cause delusions, hallucinations, disorganized thinking, paranoia and social withdrawal, as well as making the individual dysfunctional and obsessive about normal events. Dr. Obolsky also testified that this condition can cause depressive episodes not experienced by individuals without the disorder. Brown was hospitalized in 1988 for his condition.

In November 1989, Dr. Vincent Indovina informed Illinois Central that due to Brown's condition and the added stress Brown felt when required to perform supervisory tasks, Illinois Central should limit Brown to working as a brakeman or switchman, rather than as a conductor or foreman. Although the parties dispute whether Illinois Central immediately accommodated Brown's request, the parties agree that, since April 1993, Illinois Central has allowed Brown to work trainmen's jobs only.

When Illinois Central eliminated all yard jobs in May 1995, all trainmen positions became road service jobs. As noted above, the parties dispute whether, as a result of the elimination of yard jobs, the GEB employees for the trainmen position were required to work seven days a week. Regardless, because of his condition, Brown was unable to work seven days a week as a GEB trainman. For one full year, therefore, Brown "marked off," or failed to attend work, two days a week. Illinois Central claims Brown's absenteeism went undetected for this time period.

In February 1996, John Kay became superintendent of Illinois Central's Northern Region, which includes the Chicago area. In May 1996, Kay examined the work histories of all trainmen within his district, including Brown. Kay thereafter met with Brown and several other GEB employees who Kay believed were not fulfilling their obligation to be available to work seven days per week. At a June 11, 1996 meeting, Brown gave Kay a note from Dr. Indovina stating that Brown should be limited to working a maximum of five days a week.

Kay forwarded Dr. Indovina's note to Hallie Burhoe, Illinois Central's Medical Director. Ms. Burhoe made certain internal inquiries to determine if any Illinois Central jobs existed that would accommodate both Brown's medical condition and his seniority. After she reviewed Brown's medical restriction, Ms. 1Burhoe consulted with Kay and Jack Gibbins, Illinois Central's Director of Labor Relations, about the GEB trainmen job requirements and possible accommodations Illinois Central could reasonably make for Brown. After Illinois Central determined that it could not make reasonable accommodations for Brown, Ms. Burhoe informed Brown that Illinois Central would place him on its medically disqualified list. On or about June 13, 1996, Illinois Central medically disqualified Brown from employment. To date, Brown remains on Illinois Central's seniority list and may return to work if a position becomes available that accommodates both Brown's medical condition and his seniority.

## C.    Brown's EEOC Charge and Present Complaint

On June 19, 1996 and December 24, 1996, Brown filed timely charges of discrimination on the basis of his disability with the Equal Employment Opportunity Commission ("EEOC").  On April 18, 1997, the EEOC issued Brown a Notice of Right to Sue.  On July 9, 1997, Brown timely filed his complaint in this matter, alleging Illinois Central violated the ADA when it placed him on its medically disqualified list.  Illinois Central filed a motion for summary judgment, claiming (1) Brown cannot establish a prima facie ADA claim and (2) the accommodation proposed by Brown to continue his employ with Illinois Central is unreasonable. This Court denied Illinois Central's motion for summary judgment, finding that there existed genuine issues of material fact.  Subsequently, Illinois Central filed, and the Court denied, a motion to reconsider this Court's denial of Illinois Central's motion for summary judgment.  Illinois Central now moves to dismiss for lack of subject matter jurisdiction, arguing that the RLA preempts Brown's ADA claims because they depend on an interpretation of the CBA.  Before addressing the merits of Illinois Central's motion, the Court sets forth the legal standard that guides the analysis.

## LEGAL STANDARD

Rule 12(b)(1) provides for dismissal of claims over which the federal court lacks subject matter jurisdiction.  Jurisdiction is the "power to decide" and must be

conferred upon the federal court. See In re Chicago, Rock Island & Pacific R.R. Co., 794 F.2d 1182, 1188 (7th Cir. 1986). In reviewing a 12(b)(1) motion to dismiss, the court may look beyond the complaint and view any extraneous evidence submitted by the parties to determine whether subject matter jurisdiction exists. See United Transp. Union v. Gateway Western Ry. Co., 78 F.3d 1208, 1210 (7th Cir. 1996), citing Bowyer v. United States Dep't of Air Force, 875 F.2d 632, 635 (7th Cir. 1989), cert. denied, 493 U.S. 1046, 110 S.Ct. 846, 107 L.Ed.2d 840 (1990). The plaintiff bears the burden of establishing that the jurisdictional requirements have been met. See Kontos v. United States Dep't of Labor, 826 F.2d 573, 576 (7th Cir. 1987). When a party moves for dismissal pursuant to Rule 12(b)(1), the nonmoving party must support its allegations with competent proof of jurisdictional facts. See Thomson v. Gaskill, 315 U.S. 442, 446, 62 S.Ct. 673, 86 L.Ed. 951 (1942). With these principles in mind, the Court evaluates the Defendant's motion.

## DISCUSSION

Illinois Central contends that this Court lacks subject matter jurisdiction over Brown's ADA claims because they are preempted by the RLA. According to Illinois Central, because Brown's ADA claims require interpretation of the CBA, the RLA preempts Brown's claims. The Court agrees.

Two Seventh Circuit decisions guide this Court's analysis in this action: Monroe v. Missouri Pacific Railroad Co., 115 F.3d 514 (7th Cir. 1997), and Coker

- 8 -

v. Trans World Airlines, Inc., 165 F.3d 579 (7th Cir. 1999). In Monroe, the Seventh Circuit found that the RLA preempted a claimant's federal FELA claim as well as his Illinois state law claim because they constituted "minor disputes" under the RLA, which fall under the exclusive jurisdiction of the RLA's Adjustment Board. See Monroe, 115 F.3d at 518. In Coker, the Seventh Circuit held that the RLA may preempt certain ERISA claims if they constitute "minor disputes" under the RLA. See Coker, 165 F.3d at 584. In Coker, however, the Seventh Circuit more explicitly addressed the approach that should be taken when a court considers the precedence of one federal statute over another. It explained that, when faced with the choice between two federal statutes, a court must analyze both to determine if they are incompatible or if they can be harmonized, and if they are incompatible to decide which one Congress meant to take precedence. See id. at 583-84. Because ERISA had language indicating that it was not meant to "alter, amend, modify, invalidate, impair, or supercede any law of the United States ... or any rule or regulation issued under any such law," while the RLA was a comprehensive statute for labor dispute resolution, the court decided that the RLA's minor/major dichotomy controlled. See id. at 584, quoting 29 U.S.C. §1144(d). Although it did not engage in this specific analysis in Monroe, the Seventh Circuit indicates in Coker that it did make such a consideration in Monroe. See id. This Court thus

assumes that in <u>Monroe</u> the Seventh Circuit determined that a more comprehensive RLA statue took precedence over FELA.

The Seventh Circuit, in <u>Coker</u>, having determined that the RLA took precedence over ERISA then engaged in determining whether the claimant's ERISA claim was a minor or major dispute. <u>See id</u>. Because the ERISA claim was a major dispute, the RLA did not preempt the ERISA claim in <u>Coker</u>. <u>See id</u>.

In the instant case, the Court is faced with a choice between the ADA and the RLA. Unlike in <u>Coker</u>, neither of these statutes contains language indicating that it should have less effect than the other. Rather both statutes are comprehensive--the ADA in eliminating discrimination against individuals with disabilities and the RLA in labor dispute resolution. "Absent a clearly expressed intention that Congress intended one federal statute to preempt another, a court must regard each as effective and give them simultaneous effect." <u>U.S. v. Palumbo Brothers, Inc.</u>, 145 F.3d 850, 865 (7th Cir. 1998). Moreover, courts are reluctant to find that one federal statute preempts another. <u>See id</u>. Because neither the ADA nor the RLA clearly expresses an intent to preempt the other, the Court, in this action, will read the ADA and RLA to coexist harmoniously. <u>But see Hawaiian Airlines, Inc. v. Norris</u>, 512 U.S. 246, 253, 114 S.Ct. 2239, 2244, 129 L.Ed.2d 203 (1994) (RLA preempts minor disputes based in state law).

The ADA states that one of its purposes is "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. §12101(b)(1). Congress enacted the RLA, which governs collective bargaining agreements in the railway industry, to promote stability in labor-management relations by providing a comprehensive framework for labor dispute resolution. See Hawaiian Airlines, Inc., 512 U.S. at 252, 114 S.Ct. at 2243, citing Atchison, T. & S.F.R. Co. v. Buell, 480 U.S. 557, 562, 107 S.Ct. 1410, 1414, 94 L.Ed.2d 563 (1987). Thus, the RLA provides a mandatory arbitral mechanism for the "prompt and orderly settlement" of two classes of disputes. See Hawaiian Airlines, Inc., 512 U.S. at 252, 114 S.Ct. at 2244, citing 45 U.S.C. §151a. Major disputes comprise the first class of disputes and involve the creation of contractual rights, while minor disputes form the second class of disputes and seek to enforce these contractual rights. See Hawaiian Airlines, Inc., 512 U.S. at 253, 114 S.Ct. at 2244. While a claimant may sue immediately in federal court over a major dispute, the Adjustment Board under the RLA has exclusive jurisdiction over minor disputes. See Coker, 165 F.3d at 583, 584.

In harmonizing the ADA and the RLA, the Court finds the RLA's minor/major distinction useful and will employ it along with the Seventh Circuit's analysis in Monroe and Coker to determine which disputes must be brought exclusively under the RLA for arbitration. When ADA claims are independent of

the CBA, the concerns of the ADA are at the forefront. Claims that are independent of the CBA are considered major disputes under the RLA and are not subject to the Adjustment Board's exclusive jurisdiction. See Coker, 165 F.3d at 583. Thus, ADA claims that are independent of the CBA such that they can be characterized as major disputes may be brought in federal court. However, when an ADA claim depends on an interpretation of the CBA, the RLA's particular goal to regulate disputes that grow out of an interpretation or application of the CBA is prominent. Such claims that depend on and can be resolved by the CBA are considered minor disputes under the RLA and must submit exclusively to RLA mechanisms for adjudication. See Monroe, 115 F.3d at 516. Thus, should the Court deem Brown's ADA claims "minor disputes" within the meaning of the RLA, the RLA would preempt them, and the Court would lack subject matter jurisdiction over those claims.

Brown's ADA claims are "minor disputes." Minor disputes are those that grow "out of grievances, or out of the interpretation or application of [CBA's]." Hawaiian Airlines, Inc., 512 U.S. at 253, 114 S.Ct. at 2244. The Seventh Circuit has found that a minor dispute arises when either a CBA provides the only source for a plaintiff's claim or when adjudication of a plaintiff's claim requires interpretation of a CBA. See Monroe, 115 F.3d at 519. Courts should categorize a dispute as minor "if it is even 'arguably justified' that the dispute turns on the

application of the CBA." <u>Coker</u>, 165 F.3d at 583, <u>citing</u> <u>Hawaiian Airlines</u>, 512 U.S. at 265-66, 114 S.Ct. 2239. Illinois Central does not contend that the CBA provides the only source for Brown's claims; rather, Illinois Central argues that Brown's ADA claims require and may be resolved by an interpretation of the CBA.

Brown, however, argues that his ADA claims do not depend on an interpretation of the CBA and are not minor disputes because his claims merely present questions of fact. "'Purely factual questions' about an employee's conduct or an employer's conduct and motives do not 'requir[e] a court to interpret any term of a collective-bargaining agreement.'" <u>Hawaiian Airlines, Inc.</u>, 512 U.S. at 261, 114 S.Ct. at 2248. Specifically, Brown argues that the Court need not interpret the CBA in order to determine the essential functions of Brown's position or to determine the issue of reasonable accommodation. Nevertheless, Brown's claims are not purely factual questions, and they do require interpretation of the CBA. This is not a case where the meaning of a CBA is uncontested and only the facts that implicate it are unclear. <u>See</u> <u>id.</u>; <u>cf.</u> <u>Mason v. Norfolk Southern Corp.</u>, No. 97 C 3668, 1997 WL 733901 (N.D. Ill. Nov. 17, 1997) (where issues are factual ones relating simply to defendant's conduct and motivation and there is no evidence that CBA provides only source of rights and no evidence that adjudication of case would involve interpretation or application of CBA, there is no RLA preemption). Analysis of Brown's ADA claims necessarily requires interpretation of the CBA in

order to determine the parameters of the reasonable accommodations Illinois Central is to provide. Cf. Monroe, 115 F.3d at 518.

At the heart of Brown's claim is whether the CBA will allow the reasonable accommodations Brown asserts Illinois Central should make. Although in some circumstances a CBA would not influence an employer's ability to make reasonable accommodations, under the facts of this case, the interpretation of the CBA is directly at issue. The CBA provides that an employee in Brown's position be available to work 7 days a week. Brown places this provision of the CBA at issue with several arguments. He claims that this provision does not indicate that being available 7 days a week is essential to his position. Moreover, Brown asserts that because he need only be "available" seven days a week, he arguably could fulfill the provision by actually working five days a week. Brown also suggests that he should be allowed to work six days a week under psychiatric monitoring or that he should simply be allowed to "lay off" whenever his mental illness dictates. In order for the Court to determine whether Brown was not reasonably accommodated in his position, the Court must interpret the CBA in order to determine whether being available seven days a week is an essential function of Brown's position, and what being available seven days a week requires. Moreover, by allowing a reduction in the number of days, the CBA's provisions come into issue again because such a

reduction may create a new position under the terms of the CBA, and the assignment of such a position may require interpretation of the seniority provisions.

As such, Brown's particular ADA claims involve interpretation of the CBA. Thus, they are minor disputes that may only be adjudicated under the RLA. Cf. id.; Cain v. Union Pacific R.R. Co., No. 97 C 1443, 2000 WL 15099, at *2-3 (N.D. Ill. Jan. 5, 2000). Accordingly, the Court lacks subject matter jurisdiction over Brown's particular ADA claims.

## CONCLUSION

For the reasons set forth above, the Court grants Defendant Illinois Central's motion to dismiss for lack of subject matter jurisdiction.

Charles P. Kocoras
United States District Court Judge

Dated:  April 17, 2000